OPINION OF THE COURT
Joseph Goldstein, J.
The magic of Lassie is not just a movie script made in magicland USA, but for many a young boy and girl it may well be the theme song for their feelings about a little dog that just happens to live at home with them, and for most of these persons who have dogs at home, the greatest problem, pooper-scooper notwithstanding, is that these dogs believe *407 quite honestly that they are human beings and members of the family.
In a sense this decision might be dedicated to just such a four-legged member of the family. The facts are, at least at the beginning, not uncommon to many a home, where a pet permits his owners to live with him. As often happens, the pet (in this case, a Great Dane puppy) took ill on the weekend and the owner was unable to reach a veterinarian. To those who are not indoctrinated in this field of unusual medicine, a veterinarian in relatively suburban Nassau County may, with no disrespect meant to either medical specialty, be referred to with love and affection as a "pet’s family pediatrician”.
In any event, the human owner of this canine, defendant in this case, finally located a veterinarian and met him at the plaintiff’s animal hospital. Whether or not he saw certain signs in the waiting room seemed for a while to be in issue, but as a result of the medical care provided the pet, defendant is clearly indebted to plaintiff in the sum of $199 for medical treatment which ended four days after commencement.
The defendant does not deny this obligation, and so the story might end. But defendant seeks the return of his pet, and this is where the facts and the law seem to take an unusual and unfortunate turn, for unfortunately the puppy is dead.
Plaintiff and defendant agree that there were several telephone conversations between them, or their representatives, about plaintiff’s claim for professional services rendered and defendant’s inability, real or alleged, to pay for same all at one time. Following these discussions, defendant failed to, or felt he would not be permitted to, retrieve his pet from plaintiff’s possession and therefore did not physically present himself at plaintiff’s place of business for that purpose.
Plaintiff then saw fit to write a letter to defendant which stated as follows: "As per our conversation this afternoon, this is notify you of our procedures. Your current balance on "Jumor” is $199. We will board him for the next 10 days at $11 per day, and then if you have not picked him up we will take care of the dog in accordance with the legal methods available to dispose of abandoned dogs. At that time, your bill will be $309 and we will advise our attorney to proceed to collect this amount.”
What is the intent of such a letter to the owner of a pet? *408 Does it qualify as a notice as required by the Legislature in section 331 of the Agriculture and Markets Law?
There appears to be no case law dealing with section 331 and its companion statute, section 332. And yet, every pet and its owner are entitled to the protection extended by the members of the Legislature when they enacted these statutes. Section 331 states:
"An animal is deemed to be abandoned when it is placed in the custody of a veterinarian, veterinary hospital, boarding kennel owner or operator, stable owner or operator, or any other person for treatment, board, or care and:
"1. Having been placed in such custody for a specified period of time the animal is not removed at the end of such specified period and a notice to remove the animal within ten days thereafter has been given to the person who placed the animal in such custody, by means of registered letter mailed to the last known address of such person, or:
"2. Having been placed in such custody for an unspecified period of time the animal is not removed within twenty days after notice to remove the animal has been given to the person who placed the animal in such custody, by means of a registered letter mailed to the last known address of such person.
"3. The giving of notice as prescribed in this section shall be deemed a waiver of any lien on the animal for the treatment, board or care of the animal but shall not relieve the owner of the animal removed of his contractual liability for such treatment, board or care furnished.”
In this court’s opinion the afore-mentioned letter does not qualify as the notice mandated by section 331. In the letter the plaintiff seeks to enforce its claim for professional services rendered, to which it may well be entitled. However, from the import of the statute it would appear that same should not be asserted at the same time that plaintiff takes the position that defendant has abandoned his pet, unless a complete copy of the statute is attached to such a letter. Whether or not this pet was placed in plaintiff’s custody for a specified period of time, which requires a 10-day notice, or whether the pet was placed in plaintiff’s custody for an unspecified period of time which then would require plaintiff to give the owner a 20-day notice, was not raised before this court and is therefore not directly in issue.
*409 In this court’s opinion the language used by plaintiff was not designed to provide the warnings for which section 331 was created, but rather would indicate the commencement of some legal action for the payment of money. Notwithstanding the use of the words "abandoned dogs”, a reading of the letter would not indicate to any pet owner that his favorite four-legged companion is about to be "deemed abandoned”, that some impending disaster is about to befall it, and that this might be the last opportunity he would have to "rescue” his pet. Certainly, since only money stood between this defendant from reclaiming possession of his pet, the notice required by the statute which by its express language terminates the "veterinarian’s lien” should be such as to stimulate the pet owner to immediately visit the veterinarian and regain possession of his pet, letting the "money due and owing” worry about itself.
Unfortunately our saga of woe does not end at this juncture, but rather the facts testified to at the trial indicate that the plaintiff then, 10 days after sending the letter previously quoted from, had one of its staff deliver the Great Dane puppy to the ASPCA in the County of Queens. The plaintiff’s employee apparently received no specific instructions as regards the manner of delivery of the canine to the ASPCA, and in fact the employee herself was listed as the "owner” on the receipt issued by the ASPCA. In addition, plaintiff’s employee was not instructed by plaintiff to, and apparently did not, give any instruction to the ASPCA to put the ASPCA on notice that this was an animal being "deemed abandoned” pursuant to sections 331 and 332 of the Agriculture and Markets Law. In fact, the evidence adduced at the trial indicates that in less than 48 hours the defendant’s pet had been put to death.
At this point section 332 of the Agriculture and Markets Law is pertinent. Unfortunately for the defendant and his pet, the plaintiff failed to comply with that statute, the requirements of which set forth a final protection for the pet owner as follows: "Any person having in his care, custody or control any abandoned animal, as defined in section three hundred thirty-one of this chapter, may deliver such animal to any humane society or society for the prevention of cruelty to animals having facilities for the care and eventual disposition of such animals, or, in the case of dogs, cats and other small animals, to any pound maintained by or under contract or agreement with any county, city, town, or village within *410 which such animal was abandoned. The person with whom the animal was abandoned shall, however, oh the day of divesting himself of possession thereof, notify the person who had placed such animal in his custody of the name and address of the animal society or pound to which the animal has been delivered, such notice to be by registered letter mailed to the last known address of the person intended to be so notified. If an animal is not claimed by its owner within five days after being so delivered to such humane society or society for the prevention of cruelty to animals, or pound, such animal may at any time thereafter be placed in a suitable home or otherwise disposed of according to law.”
It is the finding of this court that the plaintiff corporation has failed to comply sufficiently with section 331 and made no attempt to comply with section 332 of the Agriculture and Markets Law and therefore must be held responsible to the defendant for the loss of defendant’s pet. While the Great Dane puppy has a value that can be enumerated in dollars, there are many factors which in the appropriate case may be taken into consideration in an effort to establish the extent of that value; not the least of these would be the age of the animal, the purchase price, pedigree, training, show quality, and last, but not least, the length of time the puppy had been living with the defendant.
In the case at bar the testimony and evidence of value offered at the trial was minimal at best, the defendant having testified that he had just acquired the dog a few days before it was taken ill and brought to the plaintiff corporation. The defendant paid no monetary consideration for the animal, and the only other testimony of value was that of plaintiff’s expert that the Great Dane puppy appeared to be a purebred dog having intrinsic value ranging between $200 but not exceeding $400. Defendant failed to demonstrate to this court that he had yet developed the love and affection one associates with a pet of long standing and certainly in this short period of time the animal could not be expected to have developed for its owner the warmth and loyalty which we ascribe to pets of this kind.
It is therefore the decision of this court that plaintiff is entitled to and shall have judgment against the defendant for and in the sum of $309, and the defendant on behalf of his counterclaim shall have judgment against the plaintiff for and in the sum of $200.